UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| JENNIFER SANDBACH, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. 4:18CV1722 RLW |
| RAFCO CLEAN, LLC, | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant Rafco Clean, LLC's Motion for Summary Judgment. (ECF No. 24) Plaintiff Jennifer Sandbach opposes the motion. (ECF No. 29) After careful consideration, the Court grants Defendant's motion and enters summary judgment in Defendant's favor.

## BACKGROUND

Defendant Rafco Clean, LLC is a janitorial company that provides cleaning and maintenance services for commercial properties. (Def. Rafco Clean, LLC's Statement of Uncontroverted Material Facts in Supp. of Its Mot. for Summ. J. ("SUMF") ¶ 1, ECF No. 24-1) Plaintiff Jennifer Sandbach began her employment with Defendant in May 2015 as a day porter, tasked with cleaning and general building upkeep. (*Id.* at ¶¶ 2-3) Andre Logan was Plaintiff's immediate supervisor, and Brian Gerkens was her second-level manager. (*Id.* at ¶¶ 4-5)

On July 14, 2017, Defendant terminated Plaintiff's employment. (*Id.* at ¶ 35) The termination notice specifically cited the following attendance violations over the preceding ninety days: six absences; thirty-seven instances of tardiness, which were defined as being more than seven minutes late; and twenty-four instances of leaving work early. (*Id.* at ¶¶ 35-36)

On January 10, 2018, Plaintiff dual filed charges of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Missouri Commission on Human Rights ("MCHR"). (Pet. for Damages ¶ 5, ECF No. 5) She received right to sue notices from the EEOC on March 19, 2018 and the MCHR on May 17, 2018. (*Id.* at ¶¶ 6-7) In June 2018, Plaintiff initiated this civil action against Defendant in state court asserting violations of the Americans with Disabilities Act of 1990 (ADA), as amended, 42 U.S.C. § 12101, *et seq.*, and the Missouri Human Rights Act (MHRA), Mo. Rev. Stat. § 213.010 *et seq.* (*Id.* at 1 & 5) Plaintiff alleges that Defendant's stated reason for terminating her employment was false and a pretext for discrimination based on Gerkens's perception that Plaintiff was disabled because of her health impairments, which she asserts were the cause of her attendance issues. (*Id.* at ¶ 18)

Defendant removed the case to federal court pursuant to 28 U.S.C. §§ 1331, 1367, and 1441(a). (ECF No. 1) In the instant motion, Defendant argues it is entitled to summary judgment with respect to both claims of discrimination. (ECF No. 24) Plaintiff opposes the motion. (ECF No. 29)

## **LEGAL STANDARD**

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Citrate*, 477 U.S. 317, 322 (1986); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011). The substantive law determines which facts are critical and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Only disputes over facts that might affect the outcome will properly

preclude summary judgment. *Id.* Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

A moving party always bears the burden of informing the Court of the basis of its motion. *Celotex Corp.*, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248. The nonmoving party may not rest upon mere allegations or denials of his pleading. *Id.*

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in his favor. *Celotex Corp.*, 477 U.S. at 331. The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Torgerson*, 643 F.3d at 1042 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

## **DISCUSSION**

Defendant moves for summary judgment by arguing that Plaintiff has failed to establish a prima facie case of discrimination under either the ADA or MHRA, that it had a legitimate and non-discriminatory reason for terminating her employment, and that Plaintiff has not shown that reason was pretextual.

### **I. ADA claim**

The ADA prohibits covered employers from discriminating against a "qualified individual" on the basis of disability. 42 U.S.C. § 12112(a). A "qualified individual" under the

ADA is defined as a person "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Id.* § 12111(8). "Under the ADA, prohibited discrimination includes discrimination against a qualified individual because of his or her disability (*i.e.*, intentional discrimination), *see* 42 U.S.C. § 12112(a)–(b)(1), as shown by evidence of disparate treatment or other proof that will vary according to the specific facts of the case." *Lipp v. Cargill Meat Sols. Corp.*, 911 F.3d 537, 543 (8th Cir. 2018) (citing *Young v. Warner-Jenkinson Co., Inc.*, 152 F.3d 1018, 1022 (8th Cir. 1998)).

In the absence of direct evidence of an employer's discriminatory intent, a plaintiff may offer indirect evidence of disability discrimination. *Id.* at 544. In cases where a plaintiff relies on indirect evidence to prove intentional discrimination under the ADA, courts apply the burden-shifting framework provided in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the *McDonnell Douglas* framework, the plaintiff must first establish a prima facie case of discrimination by demonstrating "(1) that the plaintiff was disabled within the meaning of the ADA; (2) that the plaintiff was qualified to perform the essential functions of the job [with or without a reasonable accommodation]; and (3) a causal connection between an adverse employment action and the disability." *Lipp*, 911 F.3d at 544 (quoting *Oehmke v. Medtronic, Inc.*, 844 F.3d 748, 755 (8th Cir. 2016)). If the plaintiff establishes a prima facie case, "the burden of production then shifts to the employer to show a legitimate, nondiscriminatory reason for the adverse action." *Id.* (quoting *Oehmke*, 844 F.3d at 755). The burden then shifts back to the plaintiff to show that the employer's proffered reason was a pretext for discrimination. *Id.*

Plaintiff asserts she is not disabled, but she argues Defendant – namely Gerkens – regarded her as disabled due to her admitted physical and mental impairments. As amended, the

ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment . . . ." 42 U.S.C. § 12102(1). An individual is "regarded as having such an impairment" if that individual has been "subjected to an action prohibited under this chapter because of an actual *or perceived* physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." *Id.* § 12102(3)(A) (emphasis added).

According to Plaintiff, she suffered from numerous mental impairments (post-traumatic stress disorder ("PTSD"), depression, and anxiety) and physical impairments (an unspecified gynecological condition that resulted in bleeding and vomiting). While she maintains these impairments did not negatively impact her ability to perform her work functions as a day porter, she contends her absences were the result of her needing to consult various doctors during the relevant time period in early 2017. Plaintiff admits that neither Gerkens nor anyone else employed by Defendant made explicit comments indicating they regarded her as disabled. (Dep. of Jennifer Sandbach 48:3-21, ECF No. 24-3) Rather, she asks the Court to infer Gerkens perceived her as disabled when he admonished her for her absenteeism and tardiness and allegedly warned that she would be fired if she missed work to attend a medical appointment. (*Id.*)

Defendant argues Plaintiff has failed to demonstrate anyone regarded her as disabled. Specifically, Gerkens attests that he was not aware of any of Plaintiff's physical or mental impairments. (SUMF ¶ 19, ECF No. 24-1) At most, he knew that Plaintiff had been hospitalized at one occasion and that some of her absences were due to medical appointments. (*Id.* at ¶¶ 9-

12) Gerkens maintains, however, that he neither asked why Plaintiff had been hospitalized nor was told the exact reason by Plaintiff.[1] (*Id.* at ¶ 10)

Additionally, Defendant argues Plaintiff's allegations about Gerkens's interactions with her fail to create an inference that he regarded her as disabled. First, Plaintiff believes that Gerkens regarded her as disabled because he was "short" with her, "arrogant," and generally treated her as though she was beneath him. (SUMF ¶ 41, ECF No. 24-1) However, Plaintiff testified that Gerkens's alleged condescending treatment towards her started when she began her employment with Defendant. (Dep. of Jennifer Sandbach 68:10-24, ECF No. 24-3) Second, Gerkens denies communicating to Plaintiff or anyone else that he believed she was a "nut job," "mentally unstable," or otherwise disabled in any form as Plaintiff alleges. (SUMF ¶ 14, ECF No. 24-1) Lastly, Gerkens denies telling Plaintiff she would be fired if she missed work to attend a medical appointment.

The Court finds that Plaintiff has failed to establish a prima facie case of discrimination under the ADA. The gravamen of Plaintiff's argument is that her interactions with Gerkens suggest he believed she was disabled due to her history of tardiness and absenteeism.[2] The

---

[1] Plaintiff responds that "she furnished to Defendant in early February written acknowledgement that she had been hospitalized at the V.A. Mental Clinic." (Pl.'s Resp. to SUMF. J. ¶ 10, ECF No. 26) She has not provided a copy of the written acknowledgment, explaining it "cannot be filed because it contains confidential medical information." (*Id.*) The Court notes that parties routinely file medical documents under seal to protect confidential medical information. Based on Plaintiff's representation of its contents, a notice acknowledging Plaintiff had been hospitalized is insufficient to establish Defendant knew of the *reason* for her hospitalization. *See generally Webb v. Mercy Hosp.*, 102 F.3d 958, 960 (8th Cir. 1996) (noting that, absent evidence than an employer was aware of a particular diagnosis, "that diagnosis cannot be the basis for inferring that she was regarded as mentally impaired").

[2] The Court notes that this case is based on Plaintiff's allegation that Defendant discharged her because Gerkens perceived that she was disabled and not based on any failure to accommodate an actual disability. Those theories are distinct and require different legal analyses. "In disparate treatment cases, a similarly situated disabled individual is treated differently because of his disability than less- or non-disabled individuals. The key element is discriminatory intent."

Eighth Circuit has previously noted that tardiness and absenteeism alone are not "so obviously manifestations of an underlying disability that it would be reasonable to infer that [an] employer actually knew of the disability." *Miller v. Nat'l Cas. Co.*, 61 F.3d 627, 630 (8th Cir. 1995) (quoting *Hedberg v. Ind. Bell Tel. Co., Inc.*, 47 F.3d 928, 934 (7th Cir. 1995)). "Tardiness and laziness have many causes, few of them based in illness." *Hedberg*, 47 F.3d at 932. The ADA does not require an employer, who has no other reason to believe an employee is disabled, "to retain all apparently tardy and lazy employees on the chance that they may have a disability that causes their behavior. The ADA does not require clairvoyance." *Id.* ("Of course, if an employee tells his employer that he has a disability, the employer then knows of the disability, and the ADA's further requirements bind the employer.").

The Court is mindful that it must draw all *justifiable* inferences in the nonmoving party's favor when ruling on a motion for summary judgment. *See Celotex Corp.*, 477 U.S. at 331. Plaintiff, however, has failed to offer facts to suggest the inferences she seeks are reasonable. At most, Gerkens knew Plaintiff had been hospitalized on one occasion and that some of her absences were due to medical appointments. These facts, without more, are insufficient to demonstrate a reasonable inference that Gerkens regarded her as disabled.

Plaintiff has also failed to show Defendant perceived her as disabled in a way that substantially limited a major life activity. "An employer regards an employee as disabled if it 'mistakenly believes that the employee has an impairment (which would substantially limit one

---

*Peebles v. Potter*, 354 F.3d 761, 766 (8th Cir. 2004). "In a reasonable accommodation case, the 'discrimination' is framed in terms of the failure to fulfill an affirmative duty-the failure to reasonably accommodate the disabled individual's limitations." *Id.* at 767. For this reason, assuming *arguendo* Gerkens told Plaintiff she would be fired for missing work even to attend medical appointments does not satisfy Plaintiff's burden. *See Weber v. Strippit, Inc.*, 186 F.3d 907, 917 (8th Cir. 1999) (holding that "'regarded as' disabled plaintiffs are not entitled to reasonable accommodations").

or more major life activity), or [it] mistakenly believes that an actual impairment substantially limits one or more major life activity.'" *Christensen v. Titan Distribution, Inc.*, 481 F.3d 1085, 1093 (8th Cir. 2007) (alteration in original) (quoting *Chalfant v. Titan Distribution, Inc.*, 475 F.3d 982, 988–89 (8th Cir. 2007)). Working is considered a major life activity. 42 U.S.C. § 12102(2)(A). Here, Plaintiff has failed to present any evidence demonstrating how Defendant believed she was substantially limited in her ability to perform her job functions. Rather, Defendant clearly did not believe Plaintiff was limited in her ability to work because it wanted her to appear and perform the full duties as a day porter. Accordingly, because there is no evidence that Defendant believed any alleged impairment substantially limited Plaintiff's ability to work, she has failed to establish a prima facie case of discrimination under the ADA.

Furthermore, Defendant has shown a legitimate, nondiscriminatory reason for terminating Plaintiff's employment. *See Lipp*, 911 F.3d at 544. Defendant maintains it fired Plaintiff due to her history of excessive absences, tardiness, and leaving work early. Specifically, over the ninety-day period leading up to her termination, Plaintiff was absent from work six times,[3] tardy thirty-seven times, and left work early twenty-four times.[4] (SUMF at ¶¶ 35-36, ECF No. 24-1) It is clearly a legitimate employment decision to terminate an employee for excessive absenteeism.[5]

---

[3] Defendant concedes that Plaintiff provided medical notes for four of these instances.
[4] Plaintiff attempts to dispute this calculation, in part, by claiming her immediate supervisor, Logan, had approved more of her absences. In her opposition memorandum, she attempts to shift the burden onto Defendant by stating "Defendant has not presented any declaration from Andre Logan to rebut Plaintiff's statements." (ECF No. 29, ¶ 9) Defendant correctly replies that Plaintiff fails to cite to any evidence in the record to support her contention. In fact, Plaintiff did not conduct any written discovery or take any depositions in this case. (ECF No. 24 at 2 n.1)
[5] Plaintiff cites an opinion from the Sixth Circuit for her argument that "full-time presence is not an essential function of a job just because an employer says it is." (Pl.'s Mem. of Law in Opp'n to Def.'s Mot. for Summ. J. ¶ 11, ECF No. 29) In *Hostettler v. College of Wooster*, a human resources generalist sued her employer for discrimination under the ADA. 895 F.3d 844, 848

Plaintiff has failed to show that Defendant's proffered reason was a pretext for discrimination. *See Lipp*, 911 F.3d at 544. "A plaintiff may show pretext, among other ways, by showing that an employer (1) failed to follow its own policies, [or] (2) treated similarly-situated employees in a disparate manner . . . ." *E.E.O.C. v. Prod. Fabricators, Inc.*, 763 F.3d 963, 970 (8th Cir. 2014) (alteration in original) (quoting *Lake v. Yellow Transp., Inc.*, 596 F.3d 871, 874 (8th Cir. 2010)). Plaintiff argues Defendant failed to follow its progressive discipline procedure because her third "purported" warning was not followed by a three-day suspension. (Pl.'s Resp. to SUMF. J. ¶ 30, ECF No. 26) Defendant counters that its doing something positive for Plaintiff by not enforcing the three-day suspension is insufficient evidence to establish pretext to hide discriminatory intent. The Court agrees. It is undisputed that Plaintiff received the necessary three warnings prior to her termination. Plaintiff attempts to argue another employee, Liz Fiala, was similarly situated to her but treated more favorably. Defendant avers Fiala suffered from a temporary physical impairment (a broken wrist) and was granted a leave of absence. Plaintiff has not cited to evidence in the record to persuade the Court that Fiala had a record of attendance issues to warrant finding her similarly situated to Plaintiff. On the other hand, Defendant notes it fired four other similarly-situated non-disabled day porters between July 2017 and February 2018 due to poor attendance records similar to Plaintiff's.[6]

---

(6th Cir. 2018). The Sixth Circuit reversed the district court's grant of summary judgment in favor of the employer, in part, because, "[o]n its own, . . . full-time presence at work is not an essential function" of that plaintiff's employment. *Id.* at 856. *Hostettler*, however, was brought under a failure-to-accommodate theory of discrimination. As explained above, that is not Plaintiff's argument here.

[6] As stated above, Plaintiff was fired on July 14, 2017. According to Defendant: one other day porter was discharged on July 11, 2017 after ten absences and forty-one instances of tardiness over a four-month period; a second day porter was discharged on January 9, 2018 after four absences and twenty-two instances of tardiness over the preceding 90 days; a third day porter was discharged on January 11, 2018 after six absences over the preceding 90 days; and a fourth day porter was discharged on February 8, 2018 after four absences in a single week. (SUMF at

Lastly, Defendant has consistently stated Plaintiff was discharged solely due to her excessive attendance violations. *See Fatemi v. White*, 775 F.3d 1022, 1048 (8th Cir. 2015) (noting that a plaintiff may demonstrate pretext by pointing to an employer's shifting explanations for an adverse employment decision). Here, Plaintiff has failed to present any evidence that Defendant has ever shifted its explanation or that its consistently-stated reason for her termination, her attendance violations, was false.

Because of this analysis, the Court finds that Defendant is entitled to summary judgment on Plaintiff's ADA claim.

## II. MHRA claim

Under the MHRA, a plaintiff asserting a disability-discrimination claim must show (1) she has a disability, (2) the employer took an adverse action against her, and (3) her disability was a factor in the adverse action. *Heuton v. Ford Motor Co.*, 930 F.3d 1015, 1019 (8th Cir. 2019). The MHRA defines disability, in relevant part, as "a physical or mental impairment which substantially limits one or more of a person's major life activities, being regarded as having such an impairment, or a record of having such an impairment, which with or without reasonable accommodation does not interfere with performing the job." Mo. Rev. Stat. § 213.010(5). The Supreme Court of Missouri has stated that courts deciding claims brought under the MHRA "are guided by both Missouri law and federal employment discrimination caselaw

---

¶¶ 46, ECF No. 24-1) In response, Plaintiff contends she "cannot admit or deny" these facts concerning the termination of other day porters. (Pl.'s Resp. to SUMF. J. ¶¶ 46-47, ECF No. 26) Plaintiff responds the same to Defendant's statements regarding Fiala. (*Id.* at ¶ 48) These responses are insufficient to controvert a fact for summary judgment. "All matters set forth in the moving party's Statement of Uncontroverted Material Facts shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party." E.D.Mo. L.R. 4.01(E) ("The facts in dispute shall be set forth with specific citation(s) to the record, where available, upon which the opposing party relies."). Consequently, these facts are deemed admitted.

that is consistent with Missouri law." *Daugherty v. City of Maryland Heights*, 231 S.W.3d 814, 818 (Mo. 2007) (en banc), *abrogated on other grounds by* Mo. Rev. Stat. § 213.101.4. "Where a plaintiff relies on indirect proof of discrimination, claims of age or disability discrimination under the MHRA, like those under the federal anti-discrimination statutes, are analyzed under the burden-shifting analysis set forth in [*McDonnell Douglas*]." *Schierhoff v. GlaxoSmithKline Consumer Healthcare, L.P.*, 444 F.3d 961, 964 (8th Cir. 2006).

Based on the above analysis, Plaintiff's claim under the MHRA fails for the same reasons as her ADA claim. First, she has failed to show Gerkens or anyone else associated with Defendant regarded her as disabled. Second, Defendant has consistently offered a legitimate, non-discriminatory reason for discharging Plaintiff. And third, Plaintiff has failed to show that reason was pretextual. Consequently, the Court grants summary judgment in favor of Defendant on the MHRA claim.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Rafco Clean, LLC's Motion for Summary Judgment (ECF No. 24) is **GRANTED** and Plaintiff Jennifer Sandbach's claims against Defendants are **DISMISSED with prejudice**.

A separate Judgment accompanies this Memorandum and Order.

Dated this 9th day of January, 2020.

_____
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**